UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LESLIE WILLIAMS, : | |
|     Plaintiff, : | |
| : | |
|     v. : | CASE NO. 3:14-cv-1181(AWT) |
| : | |
| WALTER FORD, et al., : | |
|     Defendants. : | |

INITIAL REVIEW ORDER

The plaintiff, Leslie Williams, who is currently incarcerated at the Hartford Correctional Center in Hartford, Connecticut, commenced this action pro se pursuant to 42 U.S.C. § 1983 and the Federal Tort Claims Act, 28 U.S.C. § 1346.  The complaint was received by the court on August 14, 2014, and the plaintiff's motion to proceed in forma pauperis was granted on August 25, 2014.  The plaintiff names as defendants Warden Walter Ford, Warden Timothy D. Farrell, Sr., Director of Operations Dennis Roche,[1] Captain E. Green, Nurse Joanna Beaulieu, Nurse Joe Carrara and Deputy Warden Sandy Bundy.  The plaintiff seeks damages and injunctive relief.

---

[1] In the body of the document, the plaintiff states that defendant Roche was the Deputy Warden during the relevant time period.

On September 10, 2014, the plaintiff filed a motion for leave to amend accompanied by the proposed amended complaint. The plaintiff seeks to substitute Warden William Faneuff for Warden Timothy Farrell, Sr.  The plaintiff's motion is being granted.  Warden Faneuff will be added as a defendant and the claims against Warden Farrell are being voluntarily dismissed.

Under 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.  In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  But "'[a] document filed pro se is to be liberally

construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Boykin v. KeyCorp., 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

I.   Factual Allegations

On February 7, 2013, the plaintiff handed defendant Beaulieu a folded sheet of paper through the gap between the door and doorframe. When she asked what it was, the plaintiff told defendant Beaulieu that the paper was something he had made for her. The paper contained a drawing of defendant Beaulieu fully clothed and a poem:

> Mirror mirror on the wall,
> every time I see my girl anew I fall,
> lift my spirits with a look,
> drown my sorrows with a smile,
> just meet me half way and I will go the extra mile,
> to make you feel like dancin' to the beat inside your
>     heart,
> but if you forget the steps,
> I can show you where to start.

Doc. #1-1 at 2, ¶ 17.

Defendant Beaulieu showed the paper to Deputy Warden Roche. Defendants Beaulieu, Roche and Green placed the plaintiff in segregation because of the drawing. The plaintiff assumes that this was an attempt to have him transferred to a different correctional facility. When he questioned defendant Green about the move, she told him that he had not been charged with anything

3

but was under investigation.

Defendant Carrara falsely stated that he assessed the plaintiff prior to the restrictive housing placement.  In restrictive housing, defendant Green issued orderd denying the plaintiff access to his property and essential hygiene items, use of the telephone, out-of-cell exercise and the ability to purchase items from the commissary.

The cell was cold, unsanitary and infested with insects and spiders.  The lights were controlled from outside the cell to remain on for sixteen hours per day.  The plaintiff was provided soiled linens, was denied adequate clothing and had almost no human contact.  Defendant Ford violated prison directives by failing to conduct 72-hour reviews of the plaintiff's conditions or tour the restrictive housing unit.

Defendant Green did not tour the restrictive housing unit for twelve days.  On February 19, 2013, she informed the plaintiff that she had not violated prison directives and refused to remove him from segregation and/or Administrative Detention status.  The plaintiff filed an administrative grievance that day.

The plaintiff's property was returned to him on February 28, 2013, when he was returned to South Block Housing Unit and all privileges were restored.  No charges ever were filed against the

plaintiff as a result of the February 7, 2013 incident. Defendants Ford, Bundy and Green refused to reinstate the plaintiff's prison job assignment until April 15, 2013.

After his return to the cell block, the plaintiff was harassed by defendant Beaulieu and was required by other officers, who are not defendants in this case, to be locked in his cell whenever defendant Beaulieu was in the housing unit.

The plaintiff alleges that prison directives afford him a protected property interest in a prison job and that defendants Ford, Bundy and Green deprived him of that interest when they refused to reinstate him to his former job. He also contends that the denial of the job for two months denied him basic hygiene items because he did not meet the prison indigency policy. The plaintiff included further allegations of harassment but these allegations do not relate to any named defendant.

On January 5, 2014, defendant Green removed the plaintiff from his job assignment after he received a poor performance report. Defendant Bundy denied his grievance regarding the removal.

II. Analysis

In the original complaint and addendum that together comprise the amended complaint, the plaintiff brings nine legal claims for violation of federal constitutional provisions, three

legal claims for violation of state constitutional provisions and four claims pursuant to the Federal Tort Claims Act.

    A.    <u>Federal Constitutional Violations</u>

The plaintiff asserts the following federal constitutional claims in the original portion of the amended complaint: (1) defendants Roche, Green and Beaulieu violated his First and Fourteenth Amendment Rights by causing him to be confined in restrictive housing for the drawing and poem; (2) defendants Carrara, Beaulieu, Roche, Ford and Green denied him due process in connection with the restrictive housing placement; (3) defendants Ford, Roche and Green violated his Eighth Amendment right by confining him under unconstitutional conditions in the restrictive housing unit; (4) defendants Ford, Roche and Green violated his Eighth Amendment rights by failing to ensure that he was not punished by being housed in the restrictive housing unit without penological justification; (5) defendants Ford, Roche, Bundy and Green violated his right to due process by failing to consider whether there existed a continued basis for his continued confinement on special needs and high security status[2]; (6) the plaintiff was deprived of equal protection of the laws when he was deprived of his prison job by other defendants and

---

[2]The plaintiff's reference in Paragraph 59 of the amended complaint to "(450 days)" is unclear.

rendered unable to purchase items from the commissary and ineligible for state assistance provided to indigent inmates; (7) defendants Ford, Bundy and Green deprived the plaintiff of property without affording him due process; and (8) defendant Green deprived the plaintiff of a property interest by making false and defamatory statements that resulted in the plaintiff being subjected to harassment and ridicule.  He adds the following federal law claim in his addendum: (15) defendants Ford, Roche, Bundy, Green and Beaulieu denied him equal protection by subjecting him to segregation, confiscation of property, unfavorable classification and termination of job.

    1.    <u>Equal Protection</u>

In his sixth and fifteenth claims, the plaintiff asserts a claim for violation of his right to equal protection of the laws.

The Equal Protection Clause protects prisoners from invidious discrimination.  Rather than mandating identical treatment for each individual, it requires that similarly situated persons be treated the same.  <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439-40 (1985).  To state an equal protection claim, the plaintiff must allege facts showing that he was treated differently from other similarly situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion,

intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted). The plaintiff has not alleged facts that could show either requirement is satisfied.

The plaintiff also can assert an equal protection claim on a "class of one" theory. To state a valid equal protection "class of one" claim, the plaintiff must allege, first, that he has been intentionally treated differently from others similarly situated and, second, that there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The plaintiff must allege an "extremely high" level of similarity with the person to whom he is comparing himself. Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). The plaintiff's circumstances and the other person's must be "prima facie identical." Id. at 105. The plaintiff has identified no other inmate who was treated differently under similar circumstances. Thus, he fails to state an equal protection class of one claim. See Page v. Lantz, No. 3:03cv1271(MRK), 2007 WL 1834519, at *6 (D. Conn. June 25, 2007) (holding that class of one equal protection claim fails as a matter of law where plaintiff did not allege that similarly situated inmates were

treated differently under similar circumstances). Thus, the plaintiff's federal equal protection claim, included in legal claims six and fifteen, are being dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### 2. Denial of Prison Job

In his factual allegations, the plaintiff makes many references to the loss of his prison job. Inmates have no constitutionally protected liberty interest in their job assignment. See Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (holding that there is no constitutional right to a job without underlying state law mandating jobs for prisoners); Banks v. Norton, 346 F. Supp. 917, 921 (D. Conn. 1972) (noting that an inmate has no right to a particular job in a correctional institution); Santiago v. Commissioner of Correction, 39 Conn. App. 674, 680 (1995) (inmates have "no property or liberty interest in prison employment"); State of Connecticut Department of Correction Administrative Directive 10.1(4)A ("[n]o inmate shall have entitlement or a legitimate expectation to any work, programmatic or educational assignment or compensation therefor . . .").

The plaintiff points to Directive 10.1(1) which provides: "The Department of Correction shall provide inmates with work, programmatic or educational opportunities." He argues that this

9

policy statement creates a property interest in a prison job. The court disagrees. The fact that the Department of Correction is committed to providing work opportunities for inmates in general does not entitle every inmate to a job. Section 4 specifically states that no inmate has any entitlement to a job. Considering the directive as a whole, the court concludes that there is no legal basis for the plaintiff's claims concerning a protected property interest in his prison job. Thus, all claims relating to the loss of his prison job are being dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      3.    Deprivation of Property

In his seventh claim, the plaintiff alleges a denial of property without due process based on the failure to return his drawing. Claims for loss of property are not cognizable under section 1983. The Supreme Court has found that the Due Process Clause is not violated where a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy. See Hudson v. Palmer, 468 U.S. 517, 531 (1984); Parratt v. Taylor, 451 U.S. 527, 543 (1981). The State of Connecticut provides an adequate remedy for the kind of deprivation the plaintiff describes. See Conn. Gen. Stat. § 4-141 et seq. (providing that claims for payment or refund of

money by the state must be presented to the Connecticut Claims Commission). The state remedy is not rendered inadequate simply because the plaintiff may anticipate a more favorable remedy in federal court or because it may take longer to resolve his claim under the state system. See Hudson, 468 U.S. at 535. Thus, any federal claims regarding the failure to return the plaintiff's drawing are being dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

    4.   Due Process

The plaintiff asserts due process claims for failure to comply with institutional directives. State-created procedures do not create a protected liberty interest. Fourteenth Amendment due process protections, therefore, are not implicated by the defendants' alleged failure to comply with administrative directives. See Rhodes v. Hoy, No. 9:05-CV-836, 2007 WL 1343649, at *2 (N.D.N.Y. May 5, 2007) (holding that due process is not implicated by failure to comply with institutional administrative procedures); see also Levine v. Torvik, 986 F.2d 1506, 1515 (6th Cir. 1993) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."), overruled in part on other grounds, Thompson v. Keohane, 516 U.S. 99, 111 (1995). Thus, the plaintiff's due process claims included in legal claims two and

11

five are being dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

        4.    <u>False and Defamatory Statements</u>

In his eighth legal claim, the plaintiff asserts a federal claim based on false and defamatory statements made by defendant Green. There is no cause of action under section 1983 for defamation because the interest in one's reputation is not a right, privilege or immunity protected by the Constitution or laws of the United States. <u>See</u> <u>Paul v. Davis</u>, 424 U.S. 693, 711-12 (1976). In addition, verbal harassment alone does not give rise to a section 1983 claim. Regardless how inappropriate, unprofessional or reprehensible the conduct may appear, verbal harassment without accompanying injury does not constitute an Eighth Amendment claim. <u>See</u> <u>Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986). Thus, the plaintiff's federal claims based on false or defamatory statements are being dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

        B.    <u>Federal Tort Claims Act</u>

The Federal Tort Claims Act ("FTCA") waives sovereign immunity and permits a lawsuit to proceed against the United States under circumstances where a private person would be liable under state law. <u>See</u> 28 U.S.C. § 1346(b). The plaintiff has not named the United States as a defendant in this case and no named defendant is a federal employee. Thus, there is no factual basis

for an FTCA claim, and all FTCA claims are being dismissed pursuant to 28 U.S.C. § 1915A.

The court will, however, construe legal claims eleven through fourteen as asserting the following state law tort claims: intentional infliction of emotional distress against defendant Beaulieu, retaliation against defendant Green, negligence against defendant Ford, and false imprisonment against defendant Green.

### 1. Intentional Infliction of Emotional Distress

The plaintiff alleges that defendant Beaulieu subjected him to intentional infliction of emotional distress by bringing the drawing to defendant Bundy thereby causing him to be taken to restrictive housing and harassing him following his release from restrictive housing.

To state a claim for intentional infliction of emotional distress, the plaintiff must allege facts showing "that the [defendant] intended to inflict emotional distress or that he knew or should have known" that his conduct would cause emotional distress, "that the conduct was extreme and outrageous," that the plaintiff's distress was caused by the defendant's conduct and that the plaintiff suffered severe emotional distress. Appleton v. Bd. of Ed., 254 Conn. 205, 210, 757 A.2d 1059, 1063 (2000) (citation omitted). Only when the defendant's "conduct has been

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community" can liability be found.  "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine."  Id.

The plaintiff's drawing and poem clearly suggest a fixation on defendant Beaulieu.  Her conduct in bringing the plaintiff's drawing and poem to the attention of prison officials was reasonable.  Further, the plaintiff's placement in restrictive housing while the matter was investigated was not an extreme and outrageous response and did not exceed all possible bounds of decency.  Thus, the claim of intentional infliction of emotional distress is being dismissed.  See 28 U.S.C. § 1915A(b)(1).

C.   State Constitutional Claims

In his sixteenth claim, the plaintiff alleges that defendants Ford, Roche, Bundy, Green and Beaulieu violated his right to equal protection under Article first, section 20 of the Connecticut Constitution.  To prevail on an equal protection claim under the Connecticut Constitution, the plaintiff must establish that the state is treating similarly situated groups of individuals differently.  See Keane v. Fishetti, 300 Conn. 395, 403 (2011).  As explained above, the plaintiff does not allege

that the was treated differently from any other inmate who gave drawings and a poem to correctional staff. Thus, the state equal protection claim is being dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## ORDERS

Accordingly, the court enters the following orders:

(1) The plaintiff's motion for leave to amend [**Doc. #6**] is hereby **GRANTED**. The Clerk is directed to docket the attached amended complaint. All claims against defendant Farrell are voluntarily withdrawn. The Clerk is directed to terminate Warden Farrell as a defendant in this case.

(2) All claims pursuant to 28 U.S.C. § 1346(b), all federal claims for violation of due process, deprivation of property, denial of equal protection, denial of a prison job, and claims for making false or defamatory statements, and all state law claims for intentional infliction of emotional distress and the state constitutional claim for denial of equal protection of the laws are hereby **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the remaining federal claims, the remaining state constitutional claims and the enumerated state law claims for negligence, retaliation and false imprisonment.

(3) The **Clerk shall** verify the current work addresses for each defendant with the Department of Correction Office of Legal

Affairs, and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** of this order.  The Clerk shall report to the court on the status of that waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

    (4)  The **Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the amended complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this order.

    (5)  The **Clerk shall** send a courtesy copy of the Amended Complaint and this order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

    (6)  **The defendants shall** file their response to the complaint, either an answer or motion to dismiss, within **seventy

16

**(70) days** from the date of this order.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(7)  Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(8)  All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(9)  Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff **MUST** notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more

than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

It is so ordered

Dated this 6th day of October 2014, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
