UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| LESLIE WILLIAMS, | : | |
| Plaintiff, | : | CASE NO. 3:14-cv-1181 (VAB) |
| | : | |
| v. | : | |
| | : | |
| WALTER FORD, *et al.*, | : | |
| Defendants. | : | DECEMBER 10, 2015 |
| | : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS [ECF No. 27]**

Plaintiff, Leslie Williams, is currently incarcerated at the Hartford Correctional

Center in Hartford, Connecticut, and has filed this civil rights action *pro se* under 42

U.S.C. § 1983.  Defendants are Warden Walter Ford, Director of Operations/Deputy

Warden Dennis Roche, Captain E. Green, Nurse Joanna Beaulieu, Nurse Joe Carrara,

Deputy Warden Sandy Bundy, and Warden William Faneuff.[1]  Mr. Williams has named

all of the Defendants in their individual capacity only.  Am. Compl. ¶11, ECF No. 8.

In the operative Amended Complaint and addendum, Mr. Williams asserts sixteen

federal and state law claims against the Defendants.  Am. Compl., ECF No. 8.  As will be

discussed in further detail below, the Court reviewed and dismissed a number of Mr.

Williams's claims under 28 U.S.C. §1915A(b)(1).  *See* Initial Review Order 15, ECF No.

---

[1] In his initial Complaint, Mr. Williams also named Warden Farrell as a Defendant.  Compl., ECF No. 1.
However, he voluntarily dismissed all claims against him.  *See* Mot. to Amend ¶4, ECF No. 6; Initial
Review Order 2, ECF No. 7.  While his name does appear in Mr. Williams's Amended Complaint, ECF
No. 8, the Court will not analyze claims against him because they have already been dismissed.

7.  The Defendants now have moved to dismiss Claim One, which they characterize as a retaliation claim, Claims Three and Four against Defendants Ford and Roche only, and Claims Nine, Ten, Twelve, Thirteen and Fourteen.  Mot. to Dismiss, ECF No. 27.  For the reasons that follow, the Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. <u>Standard of Review</u>

When considering a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all possible inferences from those allegations in the plaintiff's favor.  *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.) (citation omitted), *cert. denied*, 537 U.S. 1089 (2002). The Court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted such that he should be entitled to offer evidence to support his claim.  *See id.* at 125 (citation omitted).

In reviewing a complaint under Rule 12(b)(6), the court applies "a 'plausibility standard,'" which is guided by "two working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, the requirement that the Court accept as true the allegations in a complaint "is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief.  *Id.* at 679.  Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Under this standard, the Court must also liberally construe *pro se* complaints and interpret them to "raise the strongest arguments they suggest."  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation and internal quotation marks omitted).

## II.   <u>Factual Allegations</u>

Mr. Williams alleges that, on February 7, 2013, he passed Defendant Beaulieu a folded sheet of paper containing a drawing of her, fully clothed, and the following poem:

> Mirror mirror on the wall,
> every time I see my girl anew I fall,
> lift my spirits with a look,
> drown my sorrows with a smile,
> just meet me half way and I will go the extra mile,
> to make you feel like dancin' to the beat inside your heart,
> but if you forget the steps,
> I can show you where to start.

Am. Compl. at ¶¶12-15, 17, ECF 8.  Mr. Williams alleges that Defendant Beaulieu showed the paper to Deputy Warden Roche.  *Id.* ¶19.  Defendants Beaulieu, Roche, and Green then allegedly placed Mr. Williams in segregation because of the drawing.  *Id.*

Mr. Williams claims that he believes the placement was an attempt to "attenuate" Nurse Beaulieu's alleged violation of a Department of Correction policy (when she accepted personal correspondence from an inmate) and to have him transferred to another correctional facility.  *Id.* ¶19.  He alleges that when he asked Defendant Green why he was in segregation, she told him that he had not been charged with any crime or disciplinary infraction but was "under investigation."  *Id.* ¶22.  Mr. Williams also claims that Defendant Carrara falsely stated that he assessed Mr. Williams's medical condition prior to his placement in restrictive housing.  *Id.* ¶25.

In restrictive housing, Mr. Williams alleges that Defendant Green denied him access to

his property and denied him essential hygiene items, use of the telephone, out-of-cell exercise, and the ability to purchase items from the commissary. *Id.* ¶26. Mr. Williams also claims that the cell was cold and unsanitary, and that it was infested with insects and spiders. *Id.* ¶27. Mr. Williams alleges that the lights were controlled from outside the cell and remained on for sixteen hours per day. *Id.* Mr. Williams also claims that he was given soiled linens and denied adequate clothing to keep him warm. *Id.* He alleges that he had almost no human contact while housed in segregation. *Id.* Mr. Williams also claims that Defendant Ford did not review his conditions every 72 hours or tour the restrictive housing unit, as he believes was required by the relevant Administrative Directives. *Id.* ¶29.

 Mr. Williams alleges that Defendant Green did not tour the restrictive housing unit for twelve days. *Id.* ¶30. On February 19, 2013, when Defendant Green began touring the unit, Mr. Williams allegedly informed her that holding him in administrative detention was "illegal." *Id.* According to the Amended Complaint, Defendant Green responded that she had not violated any prison directives and refused to remove him from restrictive housing or Administrative Detention status. *Id.* ¶¶30-31. After his conversation with Defendant Green, Mr. Williams allegedly filed a grievance. *Id.* ¶¶31, 49.

Mr. Williams claims that he was returned to the South Block Housing Unit on February 28, 2013 and that all of his property was returned to him on the same day. *Id.* ¶32. He alleges that no charges were filed against him as a result of the February 7, 2013 incident. *Id.* ¶33.

Mr. Williams claims that, after he was removed from restrictive housing, Defendants Ford, Bundy, and Green refused to reinstate his prison job until April 15, 2013. *Id.* ¶34. He contends that the denial of his prison job for two months deprived him of "basic necessities"

4

because he did not meet the prison indigence standard.  *Id.* ¶37.  He also claims that Defendant

Beaulieu and other unnamed correctional officers "constantly harassed" him by requiring that he

be "locked in" whenever she was near him.  *Id.* ¶33.

Mr. Williams also alleges that, on January 5, 2014, Defendant Green removed Mr.

Williams from his job assignment after he received a poor performance report.  *Id.* ¶45.

Defendant Bundy denied Mr. Williams's grievance regarding this incident.  *Id.*

## III.    Discussion

In the Amended Complaint and addendum, Mr. Williams asserts sixteen claims that can

be divided into three categories, namely—federal constitutional claims (Claims One through

Eight and Fifteen); state constitutional claims (Claims Nine, Ten and Sixteen); and claims under

the Federal Tort Claims Act but construed by the Court as state tort law claims (Claims Eleven

through Fourteen).  Am. Compl. at 7-12, at Addendum 11-12, ECF No. 8.

Mr. Williams's federal law claims are as follows:  (1) Defendants Roche, Green, and

Beaulieu deprived Mr. Williams of a protected liberty interest under the First and Fourteenth

Amendments and/or improperly retaliated against him when they confined him in restrictive

housing for the drawing and poem; (2) Defendants Carrara, Beaulieu, Roche, Ford, and Green

deprived Mr. Williams of his liberty without affording him due process in violation of the

Fourteenth Amendment when they failed to follow proper restrictive housing procedures; (3)

Defendants Ford, Roche, and Green violated Mr. Williams's Eighth Amendment rights by

subjecting him to unconstitutional conditions of confinement in the restrictive housing unit; (4)

Defendants Ford, Roche, and Green violated Mr. Williams's Eighth Amendment rights by failing

to ensure that he was not subjected to punishment without penological justification in the

restrictive housing unit; (5) Defendants Ford, Roche, Bundy, and Green deprived Mr. Williams of a liberty interest without due process in violation of the Fourteenth Amendment when they failed to consider whether there was a continuing basis to confine him on special needs and high security status; (6) Defendant Ford denied Mr. Williams equal protection of the laws under the Fourteenth Amendment when Mr. Williams was deprived of his prison job and rendered unable to purchase items from the commissary during the time he was ineligible for state assistance provided to indigent inmates; (7) Defendants Ford, Bundy, and Green deprived Mr. Williams of his property without due process of law in violation of the Fifth and Fourteenth Amendments when he was removed from his job assignment; (8) Defendant Green violated Mr. Williams's Fifth and Fourteenth Amendment rights by making false and defamatory statements which caused Mr. Williams to be subjected to ridicule or harassment; and (15) Defendants Ford, Roche, Bundy, Green, and Beaulieu denied Mr. Williams equal protection of the laws under the Fourteenth Amendment by subjecting him to segregation, confiscating his property, giving him an unfavorable classification, and terminating his job.

His state constitutional claims are as follows: (9) Defendants Ford, Roche, Green, and Beaulieu violated Article First, Section Four of the Connecticut Constitution by punishing Mr. Williams for freely speaking, writing, or publishing his sentiments; (10) Defendants Ford, Roche, and Green violated Article First, Section Nine of the Connecticut Constitution because their actions in punishing him were not clearly warranted by law; and (16) Defendants Ford, Roche, Bundy, Green, and Beaulieu denied him equal protection of the laws under Article First, Section Twenty of the Connecticut Constitution.

His state law tort claims, which he frames under the Federal Tort Claims Act, are as

6

follows:  (11) Defendant Beaulieu intentionally inflicted emotional distress on Mr. Williams;

(12) Defendant Green retaliated against Mr. Williams; (13) Defendant Ford was negligent; and

(14) Defendant Green falsely imprisoned Mr. Williams.

Mr. Williams seeks a declaration that the requirements that indigent inmates must meet to

receive state assistance are unconstitutional and an injunction ordering that his drawing and

poem be returned.  Am. Compl. ¶¶71-72, ECF No. 8.  He also seeks punitive and compensatory

damages, including compensation for his drawing and poem if the Defendants have damaged it

or cannot return it.  *Id.* ¶¶73-74.  He also asks for a declaration that the Defendants actions

alleged in the Amended Complaint violated his constitutional rights.  *Id.* at Addendum ¶7.

In the Initial Review Order, filed October 6, 2014, the Court dismissed all claims brought

under the Federal Tort Claims Act but indicated it would exercise supplemental jurisdiction over

the underlying state law torts.  Initial Review Order 12-13, ECF No. 7.  The Court also dismissed

some of the federal claims, namely those for denial of due process for failing to follow

institutional rules, deprivation of property, denial of equal protection, denial of a prison job, and

claims for making false or defamatory statements.  *Id.* at 15.  It also dismissed the state law claim

for intentional infliction of emotional distress and the state constitutional claim for denial of

equal protection of the laws.  *Id.*  Thus, Claims Two, Five, Six, Seven, Eight, Eleven, Fifteen,

and Sixteen were dismissed in their entirety.

The Defendants' motion asks the Court to dismiss Claims One, Thirteen, and Fourteen in

their entirety because they fail to state a plausible entitlement to relief under Federal Rule of

Civil Procedure 12(b)(6).  Mot. to Dismiss 1, ECF No. 27.  They ask the Court to dismiss Claims

Three and Four against Defendants Roche and Ford, again under Rule 12(b)(6).  *Id.*  They also

ask that the Court decline to exercise supplemental jurisdiction over the state law claims described in Claims Nine, Ten, and Twelve. *Id.* The Court will address the viability of each of these claims in turn.

## A.     Claim One

In his first claim, Mr. Williams contends that Defendants Roche, Green, and Beaulieu deprived him of a liberty interest protected by the Federal Constitution when they confined him in restrictive housing for the drawing and poem. In their motion, the Defendants construe this claim to be one of retaliation. Defs.' Br. 6, ECF No. 27-1. In his opposition, Mr. Williams contends that Claim One is not a claim of retaliation but rather a procedural due process claim. Opp. Br. 3-7, ECF No. 29. In its Initial Review Order, the Court dismissed Mr. Williams's due process claims premised on the failure to comply with institutional directives in Claims Two and Five but did not dismiss any portion of Claim One. *See* Initial Review Order 11-12, ECF No. 7.[2]

Construing Claim One liberally, it appears to include two separate legal theories. The first is that Mr. Williams's First Amendment rights were violated when the Defendants placed him in segregated housing for the drawing and poem—essentially a retaliation claim. Second, one might read the allegations as claiming that Mr. Williams's Fourteenth Amendment rights were violated when he was deprived of a liberty interest, namely his freedom of speech, without sufficient procedural due process.

For the former retaliation aspect of this claim to survive a motion to dismiss, Mr. Williams must allege facts that raise a plausible inference that (1) he engaged in protected speech or conduct, (2) that the Defendants took adverse action against him, and (3) that there was a

---

[2] Mr. Williams discusses aspects federal due process claims generally in his brief opposing the Defendants' Motion to Dismiss. Opp. Br. 4-6, ECF No. 29. None of his arguments provide a basis for the Court to reconsider its dismissal of Claims Two and Five.

causal connection between the protected speech and the adverse action. *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir. 2009) (citation omitted). Defendants argue that Mr. Williams's poem and drawing cannot constitute protected speech, because they are "schoolyard taunting." Defs.' Br. 7, ECF No. 27-1.

A prisoner only "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974). Courts have found that inmates have some degree of First Amendment protection in their writings and correspondence. *See e.g., Davis v. Goord*, 320 F.3d 346, (2d Cir. 2003) (noting that "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment"). But if the reaction to Mr. Williams's poem was reasonably related to a legitimate penological interest, there was no deprivation of his First Amendment rights. *See Johnson v. Goord,* 445 F.3d 532, 534-35 (2d Cir. 2006) (holding that the defendants did not violate plaintiff's First Amendment rights when they denied him free, unlimited postage for non-legal mail because such a limitation was reasonably related to legitimate penological interests) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In addition, as a general matter, the First Amendment does not protect threatening or harassing speech. *See e.g.*, *Virginia v. Black,* 538 U.S. 343, 358-360 (2003) (noting that "[t]he protections afforded by the First Amendment [ ] are not absolute" and that "true threats" and "fighting words" do not constitute speech protected under the First Amendment); *Chevalier v. Schmidt*, No. 11-CV-788(JTC), 2012 WL 6690313, at *3 (W.D.N.Y. Dec. 21, 2012) (holding that a plaintiff's threatening letter to the judge who sentenced him was not protected speech under the First Amendment); *Jermosen v. Coughlin,* 878 F. Supp. 444, 450 (N.D.N.Y. 1995)

(holding that plaintiff's use of "threatening and abusive language" found "little protection" under the First Amendment).  It also does not protect insubordinate or argumentative statements.  *See e.g., Riddick v. Arnone,* No. 3:11cv631 (SRU), 2012 WL 2716355, at *7 (D. Conn. July 9, 2012) (holding that an inmate's statement to a correctional officer that he could not issue a disciplinary report was not protected speech because it was a "schoolyard taunt").  Thus, if Mr. Williams's poem and drawing constituted harassment or insubordination, they are not protected by the First Amendment.

At this time, the Court cannot definitively conclude that Mr. Williams's poem and drawing were not constitutionally protected speech.  Discovery is required to understand the precise circumstances in which the speech occurred to determine whether it is protected by the First Amendment.  The Court notes, however, that if the facts reveal that the speech was harassing or the Defendants' reaction to his speech was reasonably related to a penological goal, Mr. Williams did not engage in speech protected by the First Amendment.  Accordingly, the Defendants' Motion to Dismiss the retaliation aspect of Claim One is **DENIED**.

As noted above, Claim One also might be construed as a procedural due process claim under the Fourteenth Amendment.  Mr. Williams alleges that he was deprived of a liberty interest, his First Amendment right to free speech, without sufficient process.  "To establish a claim for denial of procedural due process, a prisoner must show that he had a protected liberty interest and was deprived of that interest without being afforded the requisite process."  *Alston v. Cahill*, No. 3:07-CV-473 (RNC), 2012 WL 3288923, at *3 (D. Conn. Aug. 10, 2012) (citing *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000)).  Mr. Williams plausibly alleges that he received no process when the Defendants took his poem away from him.  Thus, the viability of

his claim at this stage depends on whether he had a protected liberty interest.

A liberty interest arises either from "[1] the Constitution itself, by reason of guarantees implicit in the word 'liberty'; or… [2] an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citations omitted).  The range of liberty interests protected by the Fourteenth Amendment includes the right to free speech.  *See Procunier v. Martinez*, 416 U.S. 396, 418 (1974) ("The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a liberty interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment."), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 411-14 (1989); *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 432-33 (S.D.N.Y. 2013) (holding that "the right to free speech" is a liberty interest protected under the Fourteenth Amendment but noting that free speech also "remains subject to reasonable government regulation") (citing *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 707-08 (1931)).

The extent to which that liberty interest was deprived depends on whether Mr. Williams engaged in protected speech and, if so, whether the Defendants were justified in limiting that speech to further penological objectives.  Thus, for the same reasons discussed above with respect to the retaliation claim, the Court will permit this claim to go forward.

### B.  Supervisory Liability in Claims Three and Four

In Claims Three and Four, Mr. Williams alleges that Defendants Green, Roche, and Ford subjected him to unconstitutional conditions of confinement when they confined him in the restrictive housing unit without penological justification.  He claims

that their actions violated the Eighth Amendment.  Defendants move to dismiss the
claims against Defendants Roche and Ford, because they are supervisors and Mr.
Williams has failed to allege facts consistent with supervisory liability.  Defs.' Br. 7-10,
ECF No. 27-1.

Because the doctrine of respondeat superior is not applicable to claims brought
under 42 U.S.C. §1983, Defendants Ford and Roche cannot be held liable merely because
of their positions in the chain of command.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676
(2009) ("Because vicarious liability is inapplicable to [ ] §1983 suits, a plaintiff must
plead that each Government-official defendant, through the official's own individual
actions, has violated the Constitution.").  To state a claim for supervisory liability, Mr.
Williams must allege facts supporting one or more of the following criteria:  (1) the
Defendants actually and directly participated in the alleged actions; (2) the Defendants
failed to remedy a wrong after being informed of the wrong through a report or appeal;
(3) the Defendants created or approved a policy or custom that sanctioned objectionable
conduct which rose to the level of a constitutional violation or permitted such a policy or
custom to continue; (4) the Defendants were grossly negligent in their supervision of the
officers who committed the constitutional violation; or (5) the Defendants were
deliberately indifferent to Mr. Williams's rights by failing to act in response to
information that unconstitutional acts were occurring.  *See Hernandez v. Keane*, 341 F.3d
137, 144 (2d Cir. 2003) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995)).  Mr.
Williams also must demonstrate an "affirmative" causal link between the actions of the
supervisory officials and his injuries.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir.

12

2002) (citations omitted).

In Claim Three, Mr. Wilson alleges that he was subjected to unconstitutional conditions of confinement in the restrictive housing unit.  He does not allege that Defendants Ford and Roche were responsible for, or even aware of, these conditions.  Mr. Williams specifically alleges that Defendant Ford did not tour the restrictive housing unit while he was confined there.  Am. Compl. ¶ 29, ECF No. 8.  He also attributes his conditions of confinement exclusively to Defendant Green.  *Id.* ¶ 26 ("due to orders made by Lt. Green …").

In opposition, Mr. Williams argues that the fact that he complained about his conditions of confinement to Defendant Green was sufficient to infer that Defendants Ford and Roche also were aware of his complaints.  Opp. Br. 9, ECF No. 29.  These claims are speculative and cannot support a plausible claim of personal involvement.  *See Kent v. New York,* No. 1:11-CV-1533(MAD/CFH), 2015 WL 1284824, at *5 (N.D.N.Y. Mar. 20, 2015) (finding that a "speculative assertion" that the defendants were involved in an alleged constitutional deprivation under 42 U.S.C. §1983 was insufficient to survive a motion to dismiss) (in evaluating a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)); *Romer v. Morgenthau,* 119 F. Supp. 2d 346, 355 (S.D.N.Y. 2000) (noting in the context of evaluating personal involvement that "[c]onclusory allegations cannot sustain a § 1983 claim, which requires specific facts under which a court could grant relief.") (citation omitted); *see also Dorlette v. Butkeiwicus*, No. 11-cv-1461(TLM), 2013 WL 4760943, at *20 (D. Conn. Sept. 4, 2013) ("[B]road, conclusory allegations that a high-ranking defendant was informed of an

incident are also insufficient to impose liability….” (internal quotation marks and citation omitted) (in evaluating a motion for summary judgment).  Absent any specific factual allegations that Defendants Ford and Roche were aware of the restrictions imposed by Defendant Green, the claim for supervisory liability against them must fail.

Mr. Williams also argues that Administrative Directive 9.5, Section Twenty, directly imposed a duty on Warden Ford to tour the restrictive housing unit every 72 hours and his failure to do so is sufficient to impose liability.  Opp. Br. 2, 9-10, ECF No. 29.  Mr. Williams has misconstrued the directive.  Section Twenty provides:  “[i]f an inmate is removed from population, the Unit Administrator shall review the case within 72 hours of placement in Administrative Detention to determine whether continued confinement in the status is necessary.”  Administrative Directive 9.5, §20 *available at* www.ct.gov/doc.  This section requires the Unit Administrator to review the case, presumably the facts underlying the placement on Administrative Detention status; it does not require the warden to tour the restrictive housing unit every 72 hours.  The Defendants’ Motion to Dismiss is **GRANTED** as to the allegations against Defendants Ford and Roche in Claim Three.

In Claim Four, Mr. Williams contends that Defendants Ford, Roche, and Green had a duty to ensure that he was not confined in restrictive housing without penological justification.  As indicated above, the Unit Administrator is charged under the directive with determining whether continued confinement in restrictive housing under Administrative Detention status is warranted.  In opposition to the motion to dismiss, Mr. Williams argues that Defendant Roche ordered him confined in restrictive housing and

14

that Defendant Ford was the Unit Administrator.[3]  Opp. Br. 10-11, ECF No. 29.  These allegations are sufficient, at this stage of the litigation, to show the personal involvement of Defendants Ford and Roche in the factual allegations underlying Claim Four.  The Defendants' Motion to Dismiss is, therefore**, DENIED** as to Claim Four.

### C.   <u>Claim Thirteen - Negligence</u>

In Claim Thirteen, Mr. Williams alleges that Warden Ford was negligent when he failed to conduct required periodic checks and reviews while Mr. Williams was housed in the restrictive housing unit.   The Defendants move to dismiss this claim as barred by Connecticut General Statutes Section 4-165.  Defs.' Br. 12, ECF No. 27-1.  In opposition, Mr. Williams argues that Warden Ford is not protected by Eleventh Amendment immunity or qualified immunity on this claim.  Opp. Br. 11-12, ECF No. 29.  He does not address the statutory bar.

Section 4-165 shields state officers or employees from personal liability for negligent actions taken within the scope of their employment.  Conn. Gen. Stat. §4-165(a) ("No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his employment."); *see also Miller v. Egan*, 828 A.2d 549, 561-62 (Conn. 2003).  The statute requires that any such negligence claims be asserted against the state instead.  *See* Conn. Gen. Stat. §4-165(a) ("Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter."); *Miller*, 828 A.2d at 561-52.  Section 4-165 applies to the Defendants in this case.  Conn.

---

[3] A correctional facility's warden is considered a unit administrator.  *See* Administrative Directive 1.2, §3(E) *available at* www.ct.gov/doc.

Gen. Stat. §4-141 ("As used in this chapter… 'state officers and employees' includes every person… employed in any office, position, or post in state government, whatever such person's title, classification or function" with certain exceptions that are inapplicable here).

As noted above, Warden Ford was not required to tour the restrictive housing unit every 72 hours.  Even if he were, however, the claim for negligence against him is dismissed because he cannot be held personally liable under Connecticut General Statutes Section 4-165(a).  Mr. Williams alleges that Warden Ford was acting within the scope of his employment as the warden of a state correctional facility when he failed to conduct the required checks and reviews.  Thus, the negligence claim is barred under section 4-165(a).  Mr. Williams cites no authority requiring a different result.  Accordingly, the Defendants' Motion to Dismiss is **GRANTED** as to Claim Thirteen.

### D.  <u>Claim Fourteen - False Imprisonment</u>

In Claim Fourteen, Mr. Williams alleges that Defendant Green falsely imprisoned him when she confined him in restrictive housing.  The Defendants move to dismiss this claim because Mr. Williams was imprisoned at the time the alleged acts occurred and, therefore, cannot have a claim for false imprisonment in their view.  Defs.' Br. 13, ECF No. 27-1.

In the Amended Complaint, Mr. Williams is not complaining about the fact of his confinement.  Instead, he challenges the conditions of his confinement, *i.e.,* the transfer to restrictive housing and harsher conditions.  Under common law, there is no claim for false imprisonment where the claim relates only to the conditions of confinement.  *See*

16

*Joyner v. Wezner*, No. 418200, 2000 WL 1658285, at *4 (Conn. Super. Ct. Oct. 5, 2000) ("If correctional officials have authority to confine an inmate, they cannot sensibly be held liable for the tort of false imprisonment because they have chosen to confine him in one correctional facility rather than another."); *McGowan v. United States*, 94 F. Supp. 3d 382, 391 (E.D.N.Y. 2015) ("If a private or state actor is entitled to hold a prisoner, liability for false imprisonment never rises or falls based on the conditions under which he is held…. The inquiry ends, at least for purposes of the tort of false imprisonment, upon the finding that some form—any form—of confinement was legally permitted."). As a result, the Court concludes Mr. Williams's false imprisonment claim fails, and Defendants' Motion to Dismiss Claim Fourteen must be **GRANTED**.

### E.        Claims Nine, Ten and Twelve - State Law Claims

Defendants argue that the Court should decline to exercise supplemental jurisdiction over Mr. Williams's claims that the Defendants violated Article First, Sections Four and Nine of the Connecticut Constitution.  Defs.' Br. 10-11, ECF No. 27-1. They contend that there is no clearly established cause of action for money damages under these sections of the Connecticut Constitution.  *Id.*  Article First, Section Four provides that "[e]very citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that liberty."  Article First, Section Nine provides "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law."

At their discretion, district courts "may decline to exercise supplemental jurisdiction over a claim… if [ ] the claim raises a novel or complex issue of State law."

17

28 U.S.C. §1367(c)(1); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234,

245-46 (2d Cir. 2011).  The Second Circuit has explained that the decision to decline to

exercise supplemental jurisdiction over complex or first impression legal issues derives

from the principles of federalism and comity.  *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d

Cir. 1996) ("Where a pendent state claim turns on novel or unresolved questions of state

law… principles of federalism and comity may dictate that these questions be left for

decision by the state courts.").

Connecticut courts have recognized a private right of action under Article First,

Section Four for declaratory or injunctive relief.  *See Lopez v. Smiley*, 375 F. Supp. 2d 19,

24 n.2 (D. Conn. 2005) (collecting cases); *see also Ward v. Housatonic Area Reg'l*

*Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001) (noting that the Connecticut

Supreme Court has recognized private right of action under free speech clause of

Connecticut Constitution, Article First, Sections Three through Five and Fourteen)

(citation omitted).  However, the Court has found no state cases recognizing a claim for

money damages under this constitutional provision.  *See Lopez*, 375 F. Supp. 2d at 24

n.2; *Marshall v. Town of Middlefield*, No. 3:10-cv-1009(JCH), 2012 WL 601783, at *9

(D. Conn. Feb. 23, 2012) (finding no case in which a Connecticut court has recognized a

claim for money damages under Article First, Section Four).  Although Mr. Williams

includes requests for declaratory and injunctive relief in his prayer for relief, none of

them relate to his Article First, Section Four claim.

Given the lack of state court precedent, the Court declines to exercise

supplemental jurisdiction over any possible claims for damages under Article First,

Section Four of the Connecticut Constitution, *see Lopez,* 375 F. Supp. 2d at 24-26 (refusing to exercise supplemental jurisdiction over an alleged claim for monetary damages under Article First, Section Four, among other state constitutional claims), which can be pursued in state court.

The Connecticut Supreme Court has recognized a private right of action for money damages for violations of Article First, Sections Seven and Nine, the search and seizure provisions. *See Binette v. Sabo*, 710 A.2d 688, 691, 700-01 (Conn. 1998). That cause of action, however, is not all-encompassing. Connecticut courts have only recognized a private cause of action under these sections where the conduct alleged was extreme and egregious. *See, e.g., Martin v. Brady*, 780 A.2d 961, 966-67 (Conn. App. Ct. 2001) (holding that allegations that police pushed plaintiff to ground and smashed windows and doors did not constitute egregious conduct and, therefore, failed to state a claim under Article First, Sections Seven and Nine of the Connecticut Constitution).

To support his search and seizure claim, Mr. Williams alleges that he was placed in restrictive housing for giving Defendant Beaulieu the drawing and poem and that he was denied his property for twenty-two days while he was confined there. Under current law, these allegations do not seem to constitute extreme or egregious conduct that would support a claim for damages under Article First, Section Nine of the Connecticut Constitution. State courts may choose to extend a cause of action to Mr. Williams under this provision, but it is not this Court's place to do so. Accordingly, the Court declines to exercise supplemental jurisdiction over this claim.

Defendants also ask the Court to decline to exercise supplemental jurisdiction

over Claim Twelve, the state law retaliation claim.  Defs.' Br. 10 & n.5, ECF No. 27-1.

Defendants argue that there is no clearly established cause of action for money damages

under the Connecticut Constitution for retaliation.  *Id.*  The Court agrees.  Retaliation

claims fall within the Connecticut Constitution's free speech provisions for which, as

discussed above, there is no recognized cause of action for money damages.

Accordingly, the Court declines to exercise supplemental jurisdiction over Claim Twelve.

The Defendants' Motion to Dismiss is **GRANTED** as to Claims Nine, Ten and

Twelve, because the Court declines to exercise supplemental jurisdiction over these

claims, which may be pursued in state court.

## IV.   <u>Conclusion</u>

The Defendants' Motion to Dismiss [**ECF No. 27**] is **GRANTED IN PART** and

**DENIED IN PART**.  The motion is granted as to Claims Nine, Ten, Twelve, Thirteen and

Fourteen as well as on the supervisory liability allegations in Claim Three.  The motion is denied

with regard to Count One and the supervisory liability allegations in Claim Four.

The case will proceed on the following claims:  Claim One – procedural due process and

retaliation against Defendants Roche, Green and Beaulieu; Claim Three – unconstitutional

conditions of confinement against Defendant Green; and Claim Four – excessive punishment

against Defendants Ford, Roche and Green.   As Defendants Carrara, Bundy and Faneuff are not

referenced in any of the remaining claims for relief, the Clerk is directed to terminate them as

Defendants.

**SO ORDERED** at Bridgeport, Connecticut this 10th day of December 2015.

       /s/ Victor A. Bolden       
Victor A. Bolden
United States District Judge